UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN SMALLWOOD,

    *Plaintiff*,

v.

DENIS MCDONOUGH,[1]

    *Defendant*.

Civil Action No. 18-2569 (TJK)

## MEMORANDUM OPINION

Steven Smallwood, an employee at the Department of Veterans Affairs, sues his employer for alleged violations of Title VII of the Civil Rights Act. In 2014, Smallwood filed an administrative complaint for discrimination based on his non-selection for a promotion, which the parties settled. In this suit, he claims that a few years later, his employer retaliated against him for that complaint during the process of filling other promotional opportunities for him. Before the Court is Defendant's motion for summary judgment. For the reasons described below, the Court will grant the motion.

### I. Factual Background

For over a decade, Smallwood has worked at the Department of Veterans Affairs ("VA") Police and Security Service. *See* ECF No. 19-2 ("Def. Statement of Facts") ¶ 1; ECF No. 21-1 ("Pl. Statement of Facts") ¶ 1. In 2014, he brought an Equal Employment Opportunity ("EEO") complaint asserting discriminatory non-selection. *See* ECF No. 19-5 ("Smallwood Dep.") 20:12–24:8; Def. Statement of Facts ¶ 3. The parties settled. *See* Smallwood Dep. 20:14.

---

[1] Defendant Denis McDonough, who assumed office as Secretary of Veterans Affairs on February 9, 2021, is automatically substituted for Robert Wilkie under Federal Rule of Civil Procedure 25(d).

Through this lawsuit, Smallwood alleges that in 2017, the VA retaliated against him in connection with filling the two positions described below because of that 2014 EEO activity. *See* ECF No. 21 ("Pl. Opp.") at 1; Def. Statement of Facts ¶¶ 6–7. The parties disagree as to when a key figure in Smallwood's allegations—Tony Hebert, the Interim Acting Chief of Police of the VA's Medical Center—learned about Smallwood's EEO complaint. *See* Def. Statement of Facts ¶ 5; Pl. Statement of Facts ¶ 5. Smallwood says he told Hebert about it in 2017 when he became Interim Acting Chief of Police, *see* ECF No. 21-2 ("Smallwood Aff.") ¶ 11, but Hebert testified that he did not know about it March 2018. *See* Def. Statement of Facts ¶ 5.

### A. The Training Position

On May 17, 2017, the VA issued a Vacancy Announcement for a Supervisory Police Officer Training Position on the USAJobs website that bore the Vacancy Account Number FQ-17-MMP-1960085 ("the Training Position"). *See* Def. Statement of Facts ¶ 9; Pl. Statement of Facts ¶ 9. Smallwood applied for the Training Position, but he did not receive an interview because Martina Portis, a Human Resources Staffing Specialist, determined he was ineligible and screened out his application. *See* Def. Statement of Facts ¶¶ 12–14; Pl. Statement of Facts ¶¶ 12–14. Portis did not know about Smallwood's prior EEO activity when she reviewed his application, and Hebert did not "telegraph in any way to Ms. Portis whose name he wished to see on the referral list." *See* Def. Statement of Facts ¶¶ 4, 31; Pl. Statement of Facts ¶¶ 4, 31. After the interview process and based on a panel's recommendation, Hebert selected Ryan Robinson for the position. *See* Def. Statement of Facts ¶ 32; Pl. Statement of Facts ¶ 32. The parties dispute whether Smallwood submitted the appropriate application materials demonstrating his eligibility for the Training Position and whether Robinson was more qualified than Smallwood. *See* Pl. Statement of Facts ¶ 11; Pl. Opp. at 3.

B.  **The Captain Positions**

On May 26, 2017, Portis posted an announcement for two Supervisory Police Officer Captain positions under vacancy number FQ17DJT1959286 on USAJobs ("the Captain Positions"). *See* Def. Statement of Facts ¶ 17; Pl. Statement of Facts ¶ 17. The positions had to be open for seven business days or until the first fifty applications were submitted, whichever came first. *See* Def. Statement of Facts ¶ 18; Pl. Statement of Facts ¶ 18. As it turned out, the applications closed on May 31, 2017, after fifty applications were submitted. *See* Def. Statement of Facts ¶ 18; Pl. Statement of Facts ¶ 18. Smallwood met the qualifications for the position, but he did not apply. *See* Def. Statement of Facts ¶¶ 20, 27; Pl. Statement of Facts ¶¶ 20, 27.

According to Smallwood, "in the past the previous Chief of Police would leave a copy of the position in the control room where the dispatcher sits so that other Officers on different shifts could apply." *See* Smallwood Aff. ¶ 32. Smallwood worked the night shift. *See id.* ¶ 29. A copy of the job posting was not left in the control room and no one informed Smallwood about the promotion opportunities. *See* ECF No. 21-3 at 45; Smallwood Dep. 70:13–71:9. Other police officers on the night shift discovered the position by searching the USAJobs website, *see* Def. Statement of Facts ¶ 21, and according to Smallwood, Hebert informed four officers ahead of time, before the positions were posted, *see* Pl. Statement of Facts ¶ 21.

II.  **Legal Standard**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). To survive

summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted). Courts "are not to make credibility determinations or weigh the evidence." *Lopez*, 826 F.3d at 496 (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). But the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Lopez*, 826 F.3d at 496 (emphasis omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III. Analysis

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To make out a prima facie case of retaliation, a plaintiff must show that '(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.'" *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)). Defendant is entitled to summary judgment because no reasonable jury could conclude that Smallwood suffered retaliation, even viewing the facts in the light most favorable to him.

### A. The Training Position

Defendant is entitled to summary judgment on Smallwood's claim about the Training Position because he has not raised a genuine issue of material fact about whether his non-selection was caused by his protected activity. Portis did not know about Smallwood's previous EEO activity when she posted the vacancy for the position, reviewed the responsive applications, and screened Smallwood out as ineligible. And even assuming Hebert knew about that activity then as Smallwood says, he did not suggest who should make the referral list to Portis. Thus, no reasonable jury could find a causal link between Smallwood's EEO complaint and his non-selection for the Training Position. *See Salak v. Pruitt*, 277 F. Supp. 3d 11, 22 (D.D.C. 2017) (finding that the "protected activity must be the impetus for the employer's adverse" action in a retaliation claim).

### B. The Captain Positions

Defendant is also entitled to summary judgment on Smallwood's claims about the Captain Positions because he has not raised a genuine issue of material fact about whether he suffered an adverse employment action. An "adverse employment action" in the retaliation context is a "materially adverse" employer action that is "harmful to the point" that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). But "those petty slights or minor annoyances that often take place at work and that all employees experience" are "trivial harms" that are not material. *See id.* at 68. "Although 'purely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions, the threshold is met when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" *See Holcomb v.*

*Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).

Smallwood argues that he suffered an adverse employment action because the VA failed to take steps to inform him about the Captain Position openings. But the VA's failure to do so does not rise to the level of an adverse employment action. Smallwood did not come close to suffering a material reduction in pay, benefits, job responsibilities, or "any other substantial change in working conditions" relating to his current position. *See Forkkio*, 306 F.3d at 1132. That he did not learn about the announcement is more akin to a petty slight or a minor annoyance. *See Burlington*, 548 U.S. at 68; *see also Forkkio*, 306 F.3d at 1129, 1131 (finding that an employee did not experience an adverse employment action when the employee did not receive management-related emails or other communications).

Smallwood's argument is really that the VA's failure to inform him about the Captain Positions materially affected his *future* employment opportunities. But even viewed that way, under the circumstances, what the VA failed to do was not material enough. Portis posted the Captain Positions publicly on the USAJobs website. They remained open, as the parties agree was required, for seven days or until the first fifty applications were submitted, and here it was the latter. Even if the VA did not follow its typical practice of leaving a copy of the openings in the control room, nothing prevented Smallwood from seeing the announcements on USAJobs and applying for them. Indeed, some officers working the night shift, like Smallwood, did so.

Thus, this is not a case where Smallwood was denied the opportunity to compete for the position. *See, e.g., Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000). On the flip side: no facts in the record explain why it would have made a material difference to Smallwood if the VA publicized the Captain Positions in some other way, including by leaving a copy in the control room.[2] Put slightly differently, Smallwood's claimed harm relating to his future employment opportunities is too speculative to make what happened an adverse employment action. *See Bridgeforth*, 721 F.3d at 663–64.[3]

IV. **Conclusion**

For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 28, 2021

---

[2] Smallwood also points to a policy memorandum that appears to require the VA to publicize job openings to its employees in various ways. *See* Pl. Opp. at 10. But nothing in the record makes clear that the policy memorandum applied to the Captain Positions. And even if it did, as explained above, the VA's purported failure to follow it by not publicizing the Captain Positions in some other way would not have been material or substantial enough to qualify as an adverse employment action. To the extent Smallwood argues that the Captain Positions were not *held open for applicants* for the required length of time, he has admitted facts to the contrary. *See* Def. Statement of Facts ¶ 18; Pl. Statement of Facts ¶ 18.

[3] Alternatively, as was the case with the Training Position, Defendant is also entitled to summary judgment because there is no evidence in the record connecting how the Captain Positions were publicized (or even how long they were posted) to Hebert, the only VA official Smallwood says knew about his EEO activity years beforehand.